# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JOHN DARREL BANKS                              CIVIL ACTION

VERSUS                                         NO. 13-189-JJB-RLB

CAROLYN COLVIN,
ACTING COMMISSIONER
OF THE SOCIAL SECURITY
ADMINISTRATION

## NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on August 29, 2014.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JOHN DARREL BANKS**                    **CIVIL ACTION**

**VERSUS**                              **NO. 13-189-JJB-RLB**

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER**
**OF THE SOCIAL SECURITY**
**ADMINISTRATION**

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, John Darrel Banks (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for a period of disability and disability insurance benefits. (R. Doc. 1).[1] Having found all of the procedural prerequisites met (Tr. 1-5), the Commissioner's determination is now ripe for review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). For the reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner should be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

---

[1] References to documents filed in this case are designated by: (R. Doc. [docket entry number(s)] at [page number(s)]). Reference to the record of administrative proceedings filed in this case is designated by: (Tr. [page number(s)]).

# I.      STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)).  The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted).  Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## II. ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R §

404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, after reviewing the evidence contained in the administrative record (Tr. 31-33), the ALJ made the following determinations on January 23, 2012:

1.    Plaintiff met the insured status requirements of the Social Security Act through June 30, 2015.

2.    Plaintiff has not engaged in substantial gainful activity since July 16, 2009, the day he became disabled.

3.    Between July 16, 2009 and March 31, 2011 Plaintiff had the following severe impairments: bilateral osteoarthritis of the knees with synovitis and exotosis of the tibias and femurs, and degenerative disc disease of the lumbar spine.

4.    Between July 16, 2009 and March 31, 2011 Plaintiff did not have an impairment that met or medically equaled a listing.

5.    Between July 16, 2009 and March 31, 2011 Plaintiff had the residual functional capacity (RFC) to perform sedentary work, except that in an 8-hour workday he was limited to sitting, standing or walking for less than 2 hours, and lifting less than 5 pounds.

6.    Between July 16, 2009 and March 31, 2011 Plaintiff was unable to perform his past relevant work.

7.    Plaintiff was a younger individual (age 45-49) on the disability onset date.

8.    Plaintiff has a high school education and is able to communicate in English.

9.    Plaintiff's job skills do not transfer to other jobs within the above RFC.

10.    Between July 16, 2009 and March 31, 2011, based on his age, education, work experience, and RFC, there were not a significant number of jobs in the national economy that Plaintiff could perform.

11.    Plaintiff was disabled between July 16, 2009 and March 31, 2011.

(Tr. 24-28).

As is the case here, if the claimant is found disabled at any point in the above process, the Commissioner must then determine if his or her disability continues through the date of the ALJ's decision.  A cessation of disability benefits requires a finding of medical improvement.  A finding of medical improvement requires consideration of whether the claimant:  (1) is currently engaging in substantial gainful activity; (2) has an impairment or combination of impairments that meets or medically equals one listed in the regulations; (3) has experienced medical improvement; (4) has experienced medical improvement that is related to the ability to work; (5) has experienced medical improvement, but an exception to the medical improvement applies; (6) has current impairments that when considered in combination are severe; (7) can perform past relevant work; and (8) can perform other work that exists in the national economy. 20 C.F.R. § 404.1594(f).

For the period after March 31, 2011, the ALJ made the following determinations about Plaintiff's ability to engage in substantial gainful activity:

12.     As of April 1, 2011, the day Plaintiff's disability ended, he suffered from the same severe impairments  found earlier, and Plaintiff had not developed any new impairment since April 1, 2011.

13.     As of April 1, 2011, Plaintiff's impairments did not meet or medically equal a listing.

14.     Medical Improvement occurred as of April 1, 2011.

15.     Plaintiff's medical improvement was related to his ability to work as Plaintiff's residual functional capacity increased.

16.     As of April 1, 2011, Plaintiff had the residual functional capacity to perform the full range of sedentary work — i.e., in an 8 hour day Plaintiff can lift no more than 10 pounds at a time; occasionally carry articles like docket files, ledgers, and small tools; stand and walk for up to 2 hours; and sit for no more than 6 hours.

17.     As of April 1, 2011, Plaintiff was still unable to perform his past relevant work.

18. As of April 1, 2011, Plaintiff remained a younger individual (age 45-49).

19. As of April 1, 2011, Plaintiff remained a high school graduate capable of communicating in English.

20. As of April 1, 2011, the transferability of Plaintiff's job skills was not material to determining disability as the Medical Vocational Guidelines direct a finding of 'not disabled' regardless of the transferability of Plaintiff's job skills.

21. As of April 1, 2011, based on Plaintiff's age, education, job experience, and RFC, Rule 201.21 of the Medical Vocational Guidelines directed a finding of not disabled as there were a significant number of jobs in the national economy that Plaintiff could perform.

22. Plaintiff's disability ended on April 1, 2011.

(Tr. 28-30).

## III. DISCUSSION

The ALJ discussed the record evidence relevant to Plaintiff's back impairment, but primarily found Plaintiff was disabled between July 16, 2009 and March 31, 2011 based on the physical limitations resulting from Plaintiff's bilateral knee replacements. A finding of disability based on those limitations is not unexpected, as the overwhelming majority of the record concerns Plaintiff's knee impairments and resulting bilateral knee replacement. The ALJ then determined that Plaintiff was no longer disabled as of April 1, 2011 because his knee and other impairments had medically improved and no longer prevented Plaintiff from working.

On judicial review, Plaintiff "concedes that the condition of his knees" medically improved and does not challenge that particular finding. (R. Doc. 13 at 3). Instead, Plaintiff's "argument is that the ALJ erred when he stated that 'the claimant has not developed any new impairment'" because the "record confirms that, as the knee impairments lessened, the low back pain increased." (R. Doc. 13 at 3). Therefore, the overall question before the Court is whether

the ALJ's decision is not supported by substantial evidence, or is legally erroneous, because Plaintiff had a disabling back impairment as of April 1, 2011.

In support of his appeal, Plaintiff raises six assignments of error. First, Plaintiff insists the ALJ erred at step three by not considering his June 15, 2011 medical records from Dr. Joseph Boucree, which confirmed the diagnosis of a new back impairment — spinal stenosis. Given this evidence, Plaintiff contends the ALJ should have found that Plaintiff remained disabled at step three because his back impairment met Listing 1.04A. Second, Plaintiff broadly suggests the ALJ's decision is not supported by substantial evidence because the evidence supports non-exertional limitations resulting from his back impairment that warrant a finding of disability. In line with his second argument, Plaintiff's third, fourth, fifth and sixth assignments of error question, albeit more specifically, whether substantial evidence supports the ALJ's RFC and step five determinations. Specifically, his third and fourth arguments suggest that, despite adopting Dr. Knatt's opinion, the ALJ's decision is deficient because: (a) the non-exertional limitations assessed by Dr. Knatt were not incorporated into the RFC; and (b) the ALJ still "rejected [Dr. Knatt's] opinion on the ultimate issue of disability." (R. Doc. 10 at 13). Fifth, Plaintiff similarly contends the non-exertional limitations supported by the record are inconsistent with the RFC. Plaintiff's final assignment of error is that substantial evidence does not support the step five finding because his non-exertional limitations significantly erode the occupational base for sedentary work, precluding application of the Medical Vocational Guidelines.

### A.    Plaintiff Cannot Meet Listing 1.04A (Disorders of the Spine)

Plaintiff's first assignment of error is that the ALJ's adverse finding at step three is: (1) legally deficient because the ALJ did not consider whether Plaintiff met Listing 1.04A; and (2)

not supported by substantial evidence because the ALJ did not review Dr. Boucree's June 15, 2011 diagnosis of spinal stenosis, which confirmed Plaintiff's satisfaction of Listing 1.04A.

At step three, the ALJ considers the severity of the claimant's impairments without regard to vocational factors. The ALJ applies the Social Security Administration's Listing of Impairments, which "describes for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). The criteria in the Listings are "demanding and stringent." *Falco*, 27 F.3d at 162. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ should identify the listed impairment for which the claimant's symptoms fail to qualify and provide an explanation as to how he or she determined that the symptoms are insufficiently severe to meet any listed impairment. A bare and summary conclusion that a plaintiff does not meet the criteria of any Listing is beyond meaningful judicial review. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). But, even if the ALJ fails to explain an adverse determination at step three, a reviewing court must still evaluate whether the error was harmless. *Audler*, 501 F.3d at 448.

Here, the ALJ determined that, "[w]hile the claimant has musculoskeletal impairments, they fail to meet or equal the statutory requirements of the regulation for any listing. Further, the claimant, who is represented, has not alleged that his impairments satisfy the criteria of a listing." (Tr. 25). While the ALJ does not state the basis for his conclusion at step three, it was Plaintiff's burden to prove he met a listing, yet he failed to name a particular listing that he met.[2]

---

[2] *Selders v. Sullivan*, 914 F.2d 614, 620 (5th Cir. 1990) (noting that the claimant failed to make the required showing of impairment needed to satisfy all of the criteria of a Listing, thereby concluding that substantial evidence

Nonetheless, to be entitled to relief the claimant must establish that the ALJ erred and that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

To meet Listing 1.04, a claimant must first establish a severe diagnosed spinal disorder[3] "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. pt. 404, subpt. P., app. 1 § 1.04. In addition to the diagnostic component, a claimant must satisfy one of Listing 1.04's three subparts, 1.04A, 1.04B, or 1.04C — i.e., the severity component. Each subpart describes different criteria which, if satisfied, prove the claimant's diagnosed spinal disorder is also severe enough to satisfy the Listing. To meet the criteria of Listing 1.04A, the record must contain sufficient evidence of (a) "nerve root compression characterized by neuro-anatomic distribution of pain," (b) "limitation of motion of the spine," (c) "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," and (d) "if there is involvement of the lower back, positive straight-leg raising test." 20 C.F.R., pt. 404, subpt. P, app. 1 § 1.04A.

Plaintiff believes he meets both the diagnostic and severity components of Listing 1.04A. But he contends the evidence before the ALJ only established the severity component of the Listing, because the ALJ did not fully develop the record and obtain Dr. Boucree's June 15, 2011 treatment records diagnosing spinal stenosis. Had the ALJ fulfilled his obligation, Plaintiff argues, Dr. Boucree's records would have shown he also satisfied the diagnostic component of

---

supported the ALJ's finding that the required impairments for any Listing were not present); *Beauchamp v. Comm'r of Soc. Sec.*, 2014 WL 1154117, at *8 (N.D. Ohio March 21, 2014) ("[I]n order for the ALJ to address a listing, Plaintiff has the burden in showing she meets one. Here, Plaintiff never claimed she met a listing, let alone identified one to warrant ALJ analysis.").

[3] Listing 1.04 provides the following examples of spinal disorders: "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture." 20 C.F.R., pt. 404, subpt. P, app. 1 § 1.04.

Listing 1.04A, and directed a finding of disability at step three. The Court, however, finds Plaintiff's contentions unavailing.

First, the ALJ fulfilled his obligation to fully and fairly develop the administrative record, which actually does include Dr. Boucree's treatment records between June 15, 2011 and March 13, 2012. (Tr. 491-99).[4]

Second, the emphasis Plaintiff gives to Dr. Boucree's diagnosis is misplaced for two reasons. To begin, Dr. Boucree's finding of spinal stenosis was inconsequential to the diagnostic component of Listing 1.04A, as Plaintiff's degenerative disc disease — an impairment that would also satisfy the diagnostic component — was found to be severe at step two, and was well documented throughout the record. (Tr. 364, 410, 461). Essentially, the absence of Dr. Boucree's June 15, 2011 records did not affect Plaintiff's substantial rights since the diagnostic component of Listing 1.04A was already met. Beyond that, whether Plaintiff satisfies the diagnostic requirement of the Listing is immaterial because the administrative record, including the medical evidence from Dr. Boucree (Tr. 492-99), does not contain sufficient evidence of motor loss, sensory or reflex loss, or even nerve root compression, as required by the severity component of Listing 1.04A.

---

[4] While the ALJ has a duty to fully and fairly develop the record, the "claimant has the burden of proof in establishing his disability. If the claimant does not provide sufficient evidence, the ALJ must make a decision based on the available evidence." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989); *see also Ripley v. Chafer*, 67 F.3d 552, 557 (5th Cir. 1995). It was Plaintiff's burden to prove he was disabled. At the request of Plaintiff's attorney, the ALJ agreed to hold the record open for two additional weeks after the hearing for Plaintiff to submit these records, yet Plaintiff failed to provide these records. Considering this, the ALJ was under no obligation to obtain more medical records from Dr. Boucree.

Second, while Dr. Boucree's records were not before the ALJ, they became part of the administrative record underlying the Commissioner's decision on April 2, 2012 when Plaintiff provided them to the Appeals Council for consideration as new and material evidence. (Tr. 4-5, 207, 491). *See Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (Any new medical records "before the Appeals Council [become] part of the record upon which the final decision is based."). And so, Plaintiff's argument likewise fails because this Court must review the entire administrative record, including the new evidence before the Appeals Council, to determine whether the Commissioner's findings are supported by substantial evidence. *See Higginbotham v. Barnhart*, 163 F. App'x 279, 281-82 (5th Cir. 2006)

Plaintiff points to certain evidence that could satisfy some, but not all, of the criteria of Listing 1.04A. Dr. Boucree's June 15, 2011 records, for example, found limited range of motion in Plaintiff's lumbar spine (Tr. 497), as did Dr. Knatt on March 7, 2011 (Tr. 364). Contradictory evidence, however, can also be found in the record, further supporting a determination that Plaintiff cannot meet his burden at step three. On September 20, 2011 Dr. Kenyatta Shamlin found normal range of motion in Plaintiff's lumbar spine (Tr. 472). Dr. Fote also noted normal motion of Plaintiff's lumbar spine on April 4, 2011 (Tr. 324-25).

Plaintiff has also pointed to Dr. Boucree's June 15, 2011 findings of decreased reflexes at L4 and S1 of the spine (Tr. 498), radiating leg pain (Tr. 498), and antalgic gait (Tr. 498). However, Dr. Shamlin noted normal gait, reflexes and sensation on March 4, 2011 (Tr. 358) and September 20, 2011 (Tr. 472-73). Plaintiff's February 2011 MRI found that his "[l]umbar vertebral body vertical heights appear intact without any compression deformity." (Tr. 461). And while x-rays taken by Dr. Boucree showed "straightening of the lumbar spine," there is no finding of nerve root compression. (Tr. 499).

Most importantly, despite evidence establishing some of the criteria of Listing 1.04A, Plaintiff cannot satisfy all of the criteria, as is required to meet the listing. Listing 1.04A requires motor loss accompanied by sensory or reflex loss. Evidence of motor loss includes muscle weakness or atrophy. *See, e.g., Pannell v. Astrue*, No. 11-2385, 2012 WL 4341813, at *4 (N.D. Tex. Sept. 21, 2012) ("motor loss (as shown by muscle weakness)"); *Davis v. Astrue*, No. 08-411, 2009 WL 2408175, at *3 (S.D. Tex. Aug. 3, 2009) (Listing 1.04A was not met where "the record did not contain evidence of any motor or reflex loss or atrophy, and in fact the evidence indicated 'muscle strength is 5/5 in the lower extremities. That is, no weakness. Hand grip is good. No muscle atrophy was noted.'"). Evidence of sensory loss includes numbness and

paresthesia. *See Strong v. Astrue*, 2011 WL 7394717, at *4 (W.D. La. Dec. 23, 2011) ("numbness" constitutes evidence of "[s]ensory and reflex loss"); *Williams v. Astrue*, No. 09-130, 2010 WL 989216, at *4 (W.D. La. March 15, 2010) ("parasthesia or sensory loss"); *Morris v. Astrue*, No. 07-547, 2008 WL 4791663, at *2 (N.D. Tex. Oct. 24, 2008) (plaintiff was not disabled at step three where his doctor "reported no issues with sensory loss, reflex changes, muscle spasms, muscle atrophy, or muscle weakness, all of which are objective signs included in Listing 1.04"); *Stephens v. Sullivan*, 792 F. Supp. 566, 570 (S.D. Ohio 1992) (objective evidence of "positive neurological findings" include "muscle spasm or atrophy, sensory loss, or reflex deficits").

Throughout the record, Plaintiff's treating physicians, Dr. Knatt and Dr. Shamlin, consistently found no paresthesia, no weakness, and no numbness on examination of Plaintiff's lumbar spine. (Tr. 362, 363) (Dr. Knatt reported no paresthesia or weakness on July 18, 2011 and April 4, 2011); (Tr. 472-73) (Dr. Shamlin's September 20, 2011 examination found "no muscle weakness," "no decreased muscle tone," and normal reflexes and sensation); (Tr. 358) (On March 4, 2011, Dr. Shamlin likewise found no weakness, numbness or paresthesia). On July 18, 2011, Dr. Knatt also reported "no back pain" in addition to his finding that Plaintiff did not experience paresthesia or weakness. (Tr. 362).

Therefore, Plaintiff has failed to demonstrate sensory loss and motor loss sufficient to meet Listing 1.04A. Any perceived error by the ALJ in failing to explain the basis for an adverse finding at step three (when the claimant failed to make any such argument at the hearing) is harmless.

## B. Residual Functional Capacity and the Medical Vocational Guidelines

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564. Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343-44.

Here, Plaintiff argues substantial evidence does not support the ALJ's finding that he can perform the full range of sedentary work because: (1) the ALJ "indicates that he intended to give great weight to the opinion of Dr. Knatt . . . , but he rejects the physician's opinion as to the ultimate issue";[5] (2) the ALJ ignored evidence showing that Plaintiff's "back problem became disabling before April of 2011"; and (3) the record establishes "non-exertional restrictions," which erode the occupational base for sedentary work, and "preclude application of the Medical Vocational Guidelines."[6] (R. Doc. 10 at 11-13).

First, Plaintiff is incorrect that the ALJ erred in rejecting Dr. Knatt's opinion that Plaintiff was disabled. On March 11, 2011, July 18, 2011, and December 15, 2011, Dr. Knatt provided the following diagnosis in one-paragraph letters:

---

[5] This argument is largely addressed in Plaintiff's fourth assignment of error. (R. Doc. 10 at 13-14).

[6] Plaintiff's argument concerning the existence of non-exertional limitations is contained in his second, third and fifth assignments of error, while Plaintiff's sixth assignment of error addresses his step five argument. (R. Doc. 10 at 10-16).

To Whom It May Concern:

Mr. Banks is currently being treated by Dr. Theodore Knatt for bilateral knee pain and low back pain. Mr. Banks underwent left total knee arthroplasty on 8/25/09 and right total knee arthroplasty on 4/20/10. Mr. Banks is totally disabled and is permanently unable to work. If you have any further questions please feel free to contact our office.

(Tr. 361, 400, 407).

Opinions on issues reserved to the Commissioner, like the ultimate issue of disability, are not medical opinions, as Plaintiff suggests. *See* 20 CFR § 404.1527(d) (an opinion from a medical source that a claimant is disabled is "not [a] medical opinion[]"); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) ("Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status."). A statement by a medical source that a claimant is "disabled" or "unable to work" does not require the Commissioner to find that claimant disabled. *See Barajas v. Heckler*, 738 F.2d 641, 645 (5th Cir. 1984) ("A statement made by a treating physician that a claimant is disabled does not mean that the claimant is disabled for purposes of the Social Security Act . . . ."). Therefore, the ALJ properly rejected Dr. Knatt's opinion as to the ultimate issue of disability — a decision reserved to the Commissioner.

Next, Plaintiff suggests that "while [he] experienced medical improvement with his knee problems, by February 21, 2011, the MRI of the claimant's lumbar spine documented objective evidence that his back problem had become the primary limiting impairment." (Tr. 12). Plaintiff further argues that Dr. Boucree's June 5, 2011 diagnosis of spinal stenosis confirms the presence of a disabling back impairment.

However, "[t]he mere presence of some impairment is not disabling per se. Plaintiff must show that [he] was so functionally impaired by [his diagnosed conditions] that [he] was

precluded from engaging in any substantial gainful activity." *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). In other words, it is the limitations caused by the impairments and not the diagnoses themselves that matter. Plaintiff harps on his diagnosed impairment (spinal stenosis) without alleging that its resulting limitations, if any, would be disabling either alone or in combination with his other impairments. And so, Plaintiff's diagnosis of spinal stenosis is insufficient to support a finding that the ALJ's opinion is not supported by substantial evidence.

The record likewise does not show that as of February 21, 2011, Plaintiff's back impairment precluded the performance of sedentary work, which requires up to 6 hours of sitting, and up to 2 hours of standing or walking, lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a).

Plaintiff's February 2011 MRI showed lumbar "vertebral heights" that "appear[ed] to be intact without any compression deformity . . . . [d]isc degeneration, mild at L3-4 and L4-5, moderate at L5-S1," and "[b]ilateral foraminal moderate narrowing at L3-4, L4-5, and L5-S1." (Tr. 461). The MRI, which found no evidence of compression and mostly mild degenerative disc disease, does not support an inability to perform sedentary work, and neither does the remaining evidence in the record.

To begin, Plaintiff testified that he could consistently stand for an hour before having to sit; walk, consistently, for forty-five minutes to an hour; and lift up to 10-15 pounds. (Tr. 62-63). His described daily activities included back extensions and bending to maintain function (Tr. 181), walking on the treadmill for 15 minutes, washing dishes, and doing laundry. (Tr. 70, 175-76, 181). Plaintiff explained that he experiences knee pain while doing laundry and washing

dishes, but made no mention of back pain associated with performance of those activities. (Tr. 70). Plaintiff also testified that he cuts his lawn using a push mower. (Tr. 64-65).

Plaintiff did, however, clarify that his back and knee pain increase and affect his functional abilities when he over exerts himself physically. (Tr. 68-69). Consistent with this claim, Dr. Boucree reported throughout his treatment records that Plaintiff's "pain" and "overall condition" were normally "manageable," "except with increased overall activity where it begins to interfere [with] his quality of life and activities of daily living." (Tr. 493, 494, 495). Dr. Boucree, nonetheless, explained that Plaintiff was "allowed and encouraged to continue with progressive activities" and "home exercises." (Tr. 493, 494, 495, 499). During Plaintiff's October 5, 2011 appointment, Dr. Boucree reported that Plaintiff's "lower back brace support . . . has been helpful" and instructed Plaintiff that he "may" wear it "as needed and as tolerated," but did not indicate it was necessary. (Tr. 495). Dr. Boucree's treatment records indicate, absent physical over-exertion, that Plaintiff's impairments do not prevent him from engaging in his ordinary activities of daily living. This opinion is consistent with an RFC of sedentary work, which involves sitting for 2/3 of each day and only occasionally lifting up to 10 pounds.

Similarly, on September 20, 2011 Dr. Kenyatta Shamlin "[r]ecommended regular physical activity" and "regular aerobic activity" to Plaintiff after his examination found normal range of motion in Plaintiff's lumbar spine and knees, normal gait, and no weakness, pain, tenderness or swelling in either Plaintiff's lumbar spine or knees. (Tr. 471-72, 474). Earlier, on March 4, 2011, Dr. Shamlin noted Plaintiff's gait was normal and found no lumbar spine tenderness. (Tr. 358). On April 4, 2011, Dr. Barnabas Fote observed that Plaintiff had full range of motion in his lumbar spine, and full strength and reflexes in his lower extremities, but that he walked with a slight limp. (Tr. 324-26). Dr. Knatt's February 16, 2011 and March 7, 2011

medical records do document "minimal tenderness to L-Spine, decreased range of motion, [and] positive pain with extension [but] lower extremit[ies] [were] grossly neurovascularly intact." (Tr. 364, 368). Nonetheless, Dr. Knatt's examinations of Plaintiff on February 16, March 3, April 4, July 14, and July 18 of 2011 were "[n]egative for . . . back pain, . . . paresthesias, and weakness." (Tr. 362, 363, 364, 368, 373). Dr. Knatt's April 4, 2011 and July 18, 2011 examinations likewise revealed that Plaintiff's knees were stable and "neurovascularly intact." And so, while there is evidence favorable to Plaintiff, the record contains substantial evidence supporting the ALJ's finding that Plaintiff had the RFC to perform sedentary work.

Plaintiff finally argues that while the ALJ's decision states that he adopted the exertional and non-exertional limitations assessed by Dr. Knatt on May 25, 2011, the ALJ failed to incorporate his non-exertional limitations assessed by Dr. Knatt that preclude the performance of sedentary work into the RFC.[7] Here, despite Plaintiff's argument, the ALJ appropriately gave great weight to Dr. Knatt's May 25, 2011 opinion as to the exertional and non-exertional limitations posed by Plaintiff's impairments.

On May 25, 2011, Dr. Knatt reported that Plaintiff could sit constantly (for 2/3 of the day), occasionally stand and walk (for 2.5 hours a day), lift 10 pounds occasionally (for 2.5 hours a day), and occasionally use his lower extremities for foot controls (for 2.5 hours a day), but could not push, pull, climb, balance, stoop, kneel, or crawl. (Tr. 365-66).[8]

---

[7] A medical source's statement about what an individual can still do despite their medical impairments is "entitled to special significance and may be entitled to controlling weight on issues concerning the nature and severity of an individual's impairment[s]." SSR 96–5P.

[8] This report, based on Dr. Knatt's April 4, 2011 examination of Plaintiff, showed an improvement in Plaintiff's functional abilities compared to Dr. Knatt's February 25, 2011 report indicating Plaintiff was "unable to climb, kneel, squat, walk or stand > 1 hour/day, stoop." (Tr. 365, 367).

During the hearing, the ALJ called Vocational Expert, Thomas Lafosse (VE), to give testimony of Plaintiff's ability to perform other work in the national economy, despite his impairments. (Tr. 73). The ALJ's first hypothetical asked the VE to:

> [A]ssume a hypothetical individual of the claimant's age, work background, and education who will be able to sit for six hours over the course of an eight hour workday, stand . . . and walk for up to two hours . . . but for periods of say 20 to 30 minutes each . . . and he could lift no more than 10 pounds occasionally and he would be unable to balance, stoop, kneel, crouch, or crawl, . . . and he could use his lower extremities to operate foot and leg controls on an occasional basis, but no more than that.

(Tr. 74-75); (Tr. 40) (Plaintiff is a younger individual with a high school diploma and vocation training in "AC and refrigeration and industrial electricity."); (Tr. 73) (Plaintiff has past relevant work as a chemical blender (heavy, semi-skilled) and a chemical operator (medium, skilled)).

The VE responded that the hypothetical person would be unable to perform Plaintiff's past relevant work as a chemical blender (heavy, semi-skilled), or a chemical operator (medium, skilled). (Tr. 73, 75). Instead, the VE explained, the hypothetical individual would be capable of performing "the wide range of sedentary work, which is performed while seated." (Tr. 75). As clarification, the ALJ asked if it was the VE's opinion that, "an individual who had the capabilities that I just . . . described to you in this hypothetical would be able to perform a broad range of sedentary - - work." (Tr. 77). The VE responded affirmatively. (Tr. 77). Plaintiff's attorney was then afforded an opportunity to question the VE, but chose not to. (Tr. 81). In his brief before the Court, Plaintiff likewise does not question the VE's testimony.

Ultimately, the ALJ found Plaintiff was capable of performing the full range of sedentary work, which is consistent with the VE's response to the hypothetical that incorporated every exertional and non-exertional limitation assessed by Dr. Knatt on May 25, 2011, including an inability to stoop. And so, despite the ALJ's use of the Medical Vocational Guidelines as step

five, it appears the ALJ also relied on the VE's testimony that someone with exertional and non-exertional limitations assessed by Dr. Knatt, and Plaintiff's vocational factors, could perform the full range of sedentary work.

However, Plaintiff points out that both Dr. Knatt's assessment and the ALJ's hypothetical indicate an inability to stoop. This non-exertional limitation, according to Plaintiff, would significantly erode the sedentary occupational base and preclude use of the medical vocational guidelines. *See Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (if the claimant has both exertional and nonexertional limitations and the nonexertional limitations significantly affect the RFC, then the ALJ must base his or her findings on a vocational expert's testimony or other similar evidence).

"By its very nature, work performed primarily in a seated position," like sedentary work, "entails no significant stooping." SSR 83-10, 1983 WL 31251, at *5 (Jan. 31, 1983). At the same time, Social Security Ruling 96-9P does provide that a "complete inability to stoop would significantly erode the unskilled sedentary occupational base." SSR 96–9P, 1996 WL 374185, at *8 (July 2, 1996). While that may be true, the ALJ found Plaintiff was capable of performing semi-skilled sedentary work. (Tr. 30) (ALJ applied Rule 201.21 of the Medical Vocational Guidelines, which applies to claimant's with "skilled or semi-skilled" past relevant work); (Tr. 73) (Plaintiff's work background included skilled and semi-skilled work); (Tr. 74) (ALJ's hypothetical based on someone with Plaintiff's work experience — skilled or semi-skilled work). *Heard v. Barnhart*, 110 F. App'x 88, 91 (10th Cir. 2004) ("Social Security Ruling 96–9p would not require the ALJ to find Heard to be disabled even if he could not stoop" because the ALJ found that Heard could perform both unskilled and semi-skilled sedentary labor."); *Lee v. Barnhart*, 2006 WL 891433, at *5 (E.D. Penn April 6, 2006) ("Because Lee was able to perform

semi-skilled [sedentary] jobs her inability to stoop has no bearing on her ability to work."). Furthermore, the Ruling specifies that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled,'" and it urges consultation with a vocational expert for consideration of a claimant's particular limitations, along with his or her vocational factors. *Id*. at *8. And so, the VE's testimony that Plaintiff could perform semi-skilled sedentary work despite his limitations constitutes substantial evidence upon which the ALJ could rely for his decision. (Tr. 76).

## IV.    RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on August 29, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**